FREDERIC D. CONRAD, PLAINTIFF IN ERROR *v.* DAVID GRIFFEY.

In 11· Howard, 480, it is said, " Where a witness was examined for the plaintiff, and the defendant offered in evidence declarations which he had made of a contradictory character, and then the plaintiff offered to give in evidence others, affirmatory of the first, these last affirmatory declarations were not admissible, being made at a time posterior to that at which he made the contradictory declarations given in evidence by the defendant."

The case having been remanded to the Circuit Court under a *venire facias de novo*, the plaintiff gave in evidence, upon the new trial, the deposition taken under a recent commission. of the same witness whose deposition was the subject of the former

examination, when the defendant offered to give in evidence the same affirmatory declarations which upon the former trial were offered as rebutting evidence by the plaintiff.

The object of the defendant being to discredit and contradict the deposition of the witness taken under the recent commission, the evidence was not admis-ible. He should have been interrogated respecting the statements, when he was examined under the commission.

If his declarations had been made subsequent to the commission, a new commission should have been sued out, whether his declarations had been written or verbal.

THIS case was brought up by writ of error, from the Circuit Court of the United States for the Eastern District of Louisiana.

It was before this court at December term, 1850, and is reported in 11 Howard, 480.

In order to give a clear idea of the point now brought up for decision, it may be necessary to remind the reader of some of the circumstances of that case.

Griffey was a builder of steam-engines, in Cincinnati, and made a contract with Conrad, a sugar planter, in Louisiana, to put up an engine upon his plantation for a certain sum. Disputes having arisen upon the subject, Griffey brought his action against Conrad to recover the amount claimed to be due.

Upon the trial, in 1849, the testimony of Leonard N. Nutz, taken under a commission, was given in evidence. He was the engineer who was sent by Griffey to erect and work the machine. The deposition was taken on the 1st April, 1847. This evidence being in favor of Griffey, the counsel for Conrad offered the depositions of three persons to contradict the evidence of Nutz. Griffey then produced, as rebutting evidence, a letter written by Nutz to him, under date of April 3, 1846, which was admitted by the court below, and the propriety of which admission was the point brought before this court in 11 Howard. This court having decided that the letter ought not to have been received in evidence, the cause was remanded under an order to award a *venire facias de novo*.

Before the cause came on again for trial, Griffey took the testimony of Nutz again under a commission, on the 28th of June, 1852, when the following proceedings were had, and bill of exceptions taken.

Be it known, that on the trial of this cause, the plaintiff having read in evidence the deposition of Leonard N. Nutz, taken under commission on the 28th June, 1852, and filed on the 9th July, 1852, the defendant then offered in evidence a letter of Leonard N. Nutz, dated at New Albany, on the 3d April, 1846, with an affidavit annexed by said Nutz of the same date, all addressed to the plaintiff in this cause; and as preliminary proof to the introduction of said letter, the defendant adduced the bill of exceptions

signed upon a former trial of this cause, and filed on the 23d February, 1849, and the indorsement of the clerk upon said letter of its being filed, showing that said letter had been produced by the plaintiff in said former trial, and read by his counsel in evidence as the letter of said Nutz in support of a former deposition of the same witness. And the said letter and affidavit were offered by said defendant to contradict and discredit the deposition of said witness taken on the said 28th of June, 1852; but upon objection of counsel for the plaintiff that the said witness had not been cross-examined in reference to the writing of said letter, or allowed an opportunity of explaining the same, and that upon the former trial the counsel for defendant had objected to the same document as evidence, (and the objection had been sustained by the Supreme Court of the United States,) the court sustained the said objections, and refused to allow the said letter and affidavit annexed to be read in evidence; to which ruling the defendant takes this bill of exceptions, and prays that the interrogatories and answers of said Nutz, taken on said 28th June, 1852, the said letter and affidavit annexed, of date the 3d April, 1846, with the indorsement of the clerk of filing the same, and the bill of exceptions filed on the 23d February, 1849, be all taken and deemed as a part of this bill of exceptions, and copied therewith accordingly.

THEO. H. McCALEB, *U. S. Judge*.    [SEAL.]

Upon this exception, the case came up again to this court.

It was argued by *Mr. Benjamin*, for the plaintiff in error, and by *Mr. Gilbert*, for the defendant in error.

*Mr. Benjamin*, for plaintiff in error.

From this bill of exceptions, it appears that the defendant in error, who was plaintiff in the cause below, offered in support of his case the testimony of Leonard N. Nutz, taken in St. Louis, on the 18th June, 1852, under a commission issued by the Circuit Court on the 5th of the same month. This testimony is found at p. 14 of the record.

After the testimony of Nutz had been read, the defendant offered in evidence a letter of Nutz, dated 3d April, 1846, with his affidavit of the truth of the statements contained in the letter, in order, as stated in the bill of exceptions, "to contradict and discredit his deposition taken on the 28th June, 1852."

The evidence thus offered by defendant, was rejected on two grounds: 1st. That "the witness had not been cross-examined in reference to the writing of said letter; or allowed an opportunity of explaining the same;" and 2d. That "upon the former trial, the counsel for defendant had objected to the same

Cònrad *v.* Griffey.

document as evidence, and that the objection had been sustained by the Supreme Court of the United States."

On the first ground, the objection to the evidence proceeds on a misapprehension of a rule of practice in relation to the cross-examination of a witness. The rule and its reason are so clearly set forth in 1 Greenleaf on Evidence, § 462, (6th ed.) and the authorities there cited, that comment on it is unnecessary. The witness was not under cross-examination; his testimony was not taken in court in the presence of the parties where it was possible to give him an opportunity of explanation. It was impossible for the defendant, in New Orleans, to know in advance what answers the witness would make in St. Louis to the questions propounded to him; and when those answers were read on the trial, it was perfectly legitimate to offer the former written and sworn statements of the witness on the subject-matter, to contradict and discredit his later statements.

On the second ground, it is sufficient to say that evidence is frequently admissible against a party that he is not allowed to offer in his own favor; that it is frequently admissible at one period of the trial, when not admissible at another; that it is frequently admissible for one purpose, when not admissible for another; and that the decision of the Supreme Court, in 11 Howard, did not determine that the evidence in question was totally inadmissible for any purpose by either party, at any time, but only that it was not admissible for the plaintiff in the cause for the purpose for which he offered it. An array of authorities in support of these elementary principles of the law of evidence, would be deemed disrepectful to the court.

*Mr. Gilbert,* for defendant in error, made the following points:

*First.* To authorize proof of previous acts or declarations of a witness, for the purpose of invalidating his testimony, the witness must, previous to the introduction of such evidence, be examined as to the matter. The attention of the witness, Nutz, not having been called to the letter offered in evidence, and no opportunity allowed to explain what he intended by it, such letter was inadmissible in evidence to discredit him.

A witness should always be allowed to explain what he has said or done concerning the matter under investigation, otherwise his reputation might suffer wrongfully. If his attention is not called, by cross-examination, to the supposed contradiction, he will have no opportunity to explain seeming contradictions, or errors, by making more full statements, or showing the connection of things, or defining his meaning of expressions and the terms he may have used. No man always conveys his ideas in the same language. Many, even of the most learned, fail to

4 *

express themselves clearly and properly. In such case, a few explanatory words may reconcile seeming contradictions. It would be unjust that the party should suffer where he has no means of giving an explanation, which may be most ample; and cruel to a witness to discredit him, thereby injuring his character, without allowing him an opportunity to show that he has committed no fault. Hence the rule that contradictory statements and acts of an inconsistent character cannot be given in evidence, without preparing the way for its admission by cross-examining the witness as to the supposed contradictory statements.

Phillips on Evidence, p. 294, says: "Thus it appears that a witness ought to be regularly cross-examined as to the contradictory statements supposed to have been made by him on a former occasion, before such contradictory statements can be admitted in evide ice to impeach the credit of his testimony. And this rule has been extended not only to such contradictory statements, but also to other declarations of the witness, and acts done by him through the medium of declarations or words."

Roscoe, Criminal Evidence, p. 182, says: "But in order to let in this evidence, in contradiction, a ground must be laid for it in the cross-examination of the witness who is to be contradicted. When a witness has been examined as to particular transactions, if the other side were permitted to give in evidence declarations made by him respecting those transactions at variance with his testimony, without first calling the attention of the witness to those declarations, and refreshing his memory with regard to them, it would, as has been observed, have an unfair effect upon his credit."

In the Queen's case, 2 Brod. & Bing. 312, (6 Com. Law Rep. 130, 131,) Abbott, C. J., said: "If the witness admits the words or declarations imputed to him, the proof on the other side becomes unnecessary; and the witness has an opportunity of giving such reason, explanation, or exculpation of his conduct, if any there may be, as the particular transaction may happen to furnish."

In Angus v. Smith, 1 Moody & Malkin, 473, (22 Com. Law Rep. 360,) Tindal, C. J., said: "I understood the rule to be, that before you can contradict a witness by showing that he has at some other time said something inconsistent with his present evidence, you must ask him as to the time, place, and person involved in the supposed contradiction." Cowen & Hill's Notes, 774, 775; Williams v. Turner, 7 Geo. 348; Doe v. Reagan, 5 Blackf. 217; Johnson v. Kinsey, 7 Geo. 428; Franklin Bank v. Steam Nav. Co. 11 Gill & J. 28; Palmer v. Haight, 2 Barbour, Sup. C. Rep. 210, 213; McKinney v. Neil, 1 McLean,

R. 540; Moore v. Battis, 11 Humph. 67; The United States v. Dickinson, 2 McLean, R. 325; Chapin v. Siger, 4 McLean, R. 378, 381; Wienzorpflin v. The State, 7 Blackf. 186.; Check v. Wheatley, 11 Humph. 556; Beebe v. DeBaun, 3 Eng. R. 510; McAteer v. McMulen, 2 Barb. 32; Clementine v. The State, 14 Mo. 112; Regnièr v. Cabot, 2 Gilman's R. 34; King v. Wicks, 20 Ohio, 87.

The rule is the same whether the evidence offered by way of contradiction rests in parol, or is in writing. In Roscoe's Criminal Evidence, p. 182, he says: " So, what has been said or written by a witness at a previous time may be given in evidence to contradict what he has said on the trial, if it relate to the matter in issue." . . . " But in order to let in this evidence in contradiction, a ground must be laid for it in the cross-examination of the witness who is to be contradicted."

3 Starkie's Evidence, 1740, 1741. " Where the question is so connected with the point in issue that the witness may be contradicted by other evidence, if he deny the fact, the law itself requires that the question should be put to the witness, in order to afford him an opportunity for explanation, although the answer may involve him in consequences highly penal." Same, p. 1753, 1754. The Queen's case, 2 Brod. & Bing. 284, (6 Com. Law Rep. 112,) proceeds throughout upon this principle.

Greenleaf, vol. 1, p. 579, in relation to laying a foundation by cross-examination, before offering contradictory evidence, says : " This course of proceeding is considered indispensable, from a sense of justice to the witness ; for as the direct tendency of the evidence is to impeach his veracity, common justice requires that by first calling his attention to the subject he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already given, as well as by a reëxamination to explain the nature, circumstances, meaning, and design of what he has proved elsewhere to have said. And this rule is extended, not only to contradictory statements by the witness, but to other declarations, and to acts done by him through the medium of verbal communications, or correspondence, which are offered with a view either to contradict his testimony in chief, or to prove him a corrupt witness himself, or to have been guilty of attempting to corrupt others."

In Carpenter v. Wall, 11 Adol. & El. 803, (39 Com. Law Rep. 234,) Denman, C. J., the other judges concurring, said: " When words are to be proved as having been uttered by a witness, it is always expected that he shall have an opportunity to explain." Regina v. St. George, 9 Car. & Pa. 483, (38 Com. Law Rep. 198); Johnson v. Todd, 5 Beavan, 600, 602, cited 1 Greenleaf on Ev. p. 581; Conrad v. Griffey, 11 Howard, 480.

1 Greenleaf on Ev. p. 579, in note beginning at the bottom of the page, where it is said the rule in the Queen's case is adopted in the United States, except in Maine and Massachusetts, and cites 2 Cowen & Hill's Notes on Phil. Ev. p. 774.

Jenkins v. Eldridge, 2 Story's Rep. 181, 284, Story, J. says : " If one party should keep back evidence which the other might explain, and thereby take him by surprise, the court will give no effect to such evidence, without first giving the party to be affected by it an opportunity of controverting it. This course may be a fit one in cases where otherwise gross injustice may be done."

Crowley v. Page, 7 Carrington & Payne, 789, (32 Com. Law Rep. 737.) " If the witness made a previous contradictory statement, in writing, on a matter relevant to the issue, he may be asked, on cross-examination, whether the paper containing it is in his handwriting; and if he admit it, that will entitle the other side to read it ; and if he contradicts the evidence of the witness, he may be called back to explain it." 4 Harrison's Dig. 2948, No. 11.

Yeos v. The State, 4 Eng. R. 42. " Where a witness has made a different statement from the one made by him on the trial, he is not thereby discredited, unless the discrepancy is wilful."

Story v. Saunders, 8 Humph. R. 663. " When the deposition of a witness is taken, evidence of his having made contradictory statements are not admissible to impeach his testimony, unless an opportunity to explain had been first offered him."

The contradictory statement offered in this case was the witness's testimony on a previous trial.

In Everson v. Carpenter, 17 Wend. 419, referring to the requisites for admitting a written instrument by way of contradiction, Cowen, J., said : " It was introduced, with the proper preliminary question to the witness, whether he had made the indenture and the representation about to be imputed to him. He answered with such explanations as occurred to him. Here was all the precaution required by this kind of examination by the Queen's case and others."

In Kimball v. Davis, 19 Wend. 437, Nelson C. J. considered this question at length, in a case where the defendant offered to prove that witnesses who had been examined under a commission, had subsequently made statements contradicting their written testimony. The marginal note of this decision is in these words :

" The declarations of witnesses whose testimony has been taken under a commission, made subsequent to the taking of their testimony, contradicting or invalidating their testimony as

Conrad *v.* Griffey.

contained in the depositions, is inadmissible in evidence, if objected to; the only way for the party to avail himself of such declarations, is to sue out a second commission; such evidence is always inadmissible until the witness whose testimony is thus sought to be impeached, has been examined upon the point, and his attention particularly directed to the circumstances of the transaction, so as to furnish him an opportunity for explanation or exculpation."

This case went to the Court of Errors, and is reported in the 25th of Wend., 259, where it was affirmed. Walworth, Chancellor, there said: "I concur with the Supreme Court in the opinion that it was improper to give the declarations of the witnesses in evidence without giving them, in the first place, an opportunity to explain; and the fact that the witnesses had been examined under a commission did not prevent the operation of the principle upon which the rule is founded."

Edwards, Senator, said he was satisfied with Chief Justice Nelson's reasoning on this question.

Howell *v.* Reynolds, 12 Alabama R. 128. "The rule that a witness cannot be contradicted by proof of previous counter declarations, either written or verbal, applies to testimony taken by deposition, and if such supposed contradictory declarations exist at the time the deposition is taken, the witness must have an opportunity afforded him of explaining it, if in his power. "The reason of the rule is, that he may have it in his power to explain the apparent contradiction, and the rule is the same, whether the declaration of the witness supposed to contradict his testimony be written or verbal." 3 Stark. Ev. 1741. "The question is usually made when the witnesses are examined orally in open court, and in our opinion it must also apply to testimony taken by deposition, as the deposition is a mere substitute for the witness; and we can perceive no reason why a witness testifying in this should not be entitled to the same protection as if he had testified orally, in the presence of the court and jury. If this paper existed when the plaintiff was notified that the deposition of the witness was to be taken, and was informed by the interrogatories of the testimony the witness was expected to give, it was his duty to give him an opportunity of explaining it, if he could, and reconciling it with the evidence he then gave, if there was any real or apparent contradiction between them."

Mr. Justice McLEAN delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States, for the Eastern District of Louisiana.

This action was brought to recover the balance of three thou-

sand seven hundred and eighty-one dollars and fifty-eight cents, claimed to be due under a contract to furnish, deliver, and set up, on the plantation of the defendant, in the parish of Baton Rouge, a steam-engine and sugar-mill boilers, wheels, cane carriers, and all other things necessary for a sugar-mill; all which articles were duly delivered.

The defendant in his answer set up several matters in defence.

The error alleged arises on the rejection of evidence offered by the defendant on the trial before the jury, and which appears in the bill of exceptions. The plaintiff read in evidence the deposition of Leonard N. Nutz, taken under a commission on the 28th of June, 1852, and filed the 9th of July succeeding. The defendant then offered in evidence a letter of the witness dated at New Albany, on the 3d April, 1846, with an affidavit annexed by him of the same date, addressed to the plaintiff Griffey. As preliminary proof to the introduction of said letter, the defendant adduced the bill of exceptions signed upon a former trial of this cause, and filed on the 23d February, 1849, showing that the letter had been produced by the plaintiff in the former trial, and read by his counsel in evidence as the letter of Nutz, in support of a former deposition made by him. And the said letter and affidavit were offered by the defendant to contradict and discredit the deposition of the witness taken the 28th June, 1852; but upon objection of counsel for the plaintiff that the witness had not been cross-examined in reference to the writing of said letter, or allowed an opportunity of explaining the same, it was rejected.

On the former trial the letter was offered in evidence by the plaintiff in the Circuit Court, to corroborate what Nutz, the witness, at that time had sworn to; and the letter was admitted to be read for that purpose by the court. On a writ of error, this court held that the Circuit Court erred in admitting the letter as evidence, and on that ground reversed the judgment. Conrad v. Griffey, 11 How. 492.

The rule is well settled in England, that a witness cannot be impeached by showing that he had made contradictory statements from those sworn to, unless on his examination he was asked whether he had not made such statements to the individuals by whom the proof was expected to be given. In the Queen's case, 2 Brod. & Bing. 312; Angus v. Smith, 1 Moody & Malkin, 473; 3 Starkie's Ev. 1740, 1753, 1754; Carpenter v. Wall, 11 Adol. & Ellis, 803.

This rule is founded upon common sense, and is essential to protect the character of a witness. His memory is refreshed by the necessary inquiries, which enables him to explain the state-

ments referred to, and show they were made under a mistake, or that there was no discrepancy between them and his testimony.

This rule is generally established in this country as in England. Doe *v.* Reagan, 5 Blackford, 217; Franklin Bank *v.* Steam Nav. Co. 11 Gill & Johns. 28; Palmer *v.* Haight, 2 Barbour's Sup. Ct. R. 210, 213; 1 McLean's R. 540; 2 Ib. 325; 4 Ib. 378, 381; Jenkins *v.* Eldridge, 2 Story's Rep. 181, 284; Kimball *v.* Davis, 19 Wend. 437; 25 Wend. 259. " The declaration of witnesses whose testimony has been taken under a commission, made subsequent to the taking of their testimony, contradicting or invalidating their testimony as contained in the depositions, is inadmissible, if objected to. The only way for the party to avail himself of such declarations is to sue out a second commission." " Such evidence is always inadmissible until the witness, whose testimony is thus sought to be impeached, has been examined upon the point, and his attention particularly directed to the circumstances of the transaction, so as to furnish him an opportunity for explanation or exculpation."

This rule equally applies whether the declaration of the witness, supposed to contradict his testimony, be written or verbal. 3 Starkie's Ev. 1741.

A written statement or deposition is as susceptible of explanation, as verbal statements. A different rule prevails in Massachusetts and the State of Maine.

The letter appears to have been written six years before the deposition was taken which the letter was offered to discredit. This shows the necessity and propriety of the rule. It is not probable that, after the lapse of so many years, the letter was in the mind of the witness when his deposition was sworn to. But, independently of the lapse of time, the rule of evidence is a salutary one, and cannot be dispensed with in the courts of the United States. There was no error in the rejection of the letter, under the circumstances, by the Circuit Court; its judgment is therefore affirmed, with costs.

## Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs and interest, until paid, at the same rate per annum that similar judgments bear in the courts of the State of Louisiana.