## WILHELMINA C. POST *vs.* CITY OF BOSTON.

Suffolk. Jan. 14, 15. — Feb. 25, 1886. DEVENS & GARDNER, JJ., absent.

If a cesspool and its cover, in a highway, are so constructed, that, in a heavy rain, the water which would ordinarily flow into the cesspool lifts the cover off, and leaves a hole into which a person may fall, this is a defect in the way for which the city in which the highway is situated is liable, under the Pub. Sts. c. 52, § 18, for an injury thereby occasioned, if the city had notice that the cover was liable to come off, or, by the exercise of reasonable care, could have known it, and have remedied it.

In an action against a city for an injury occasioned by falling into an open cesspool, the cover of which had floated off during a heavy rain, evidence that the cover had been off several times, during the year before the accident, under similar circumstances, is admissible on the issue whether the defect might have been remedied, or the injury prevented, by the exercise of reasonable care and diligence on the part of the city.

TORT for personal injuries occasioned to the plaintiff by an alleged defect in Sumner Street, near the corner of Orleans Street, in that part of Boston known as East Boston. Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiff introduced evidence tending to show that, at about half-past nine o'clock in the evening of September 14, 1882, the plaintiff and her sister were walking in Sumner Street, in East Boston, going to their home ; that it had been raining hard, and was then raining ; that, when they reached the corner of Orleans Street, they found that there was a large quantity of water in both Sumner Street and Orleans Street ; that the plaintiff saw in the street, just at the side of the crossing, what appeared to be a pile of dirt or a plank in the water, and stepped upon it, and went into a cesspool up to her armpits, and received the injuries complained of ; that the cover of the cesspool was made of wood and was not fastened down, resting only upon the rabbets in the stone curb around the entrance of the cesspool ; and that the cesspool was situated in the street close to the crossing.

The judge allowed the plaintiff, against the objection of the defendant, to introduce evidence that, on many occasions during one year prior to the accident, the cover had been off ; and the

witness, on cross-examination by the defendant, said he would swear to five times within a year, in times of rain, but could not give the dates.

The defendant offered evidence tending to show that the cesspool or catch-basin was some three and a half feet in diameter and five feet in depth; that near the bottom there was a brick drain or outlet, which communicated with the sewer; that the walls of the cesspool were of brick, and at the top there were granite slabs or curbing, forming an opening; that into this opening there was fitted, on one side, a narrow grating, resting upon rabbets or shoulders cut into the stone curbing; that, resting upon this grating and the granite curb on the other side, was a wooden cover of oak from two to two and a half inches thick; that the hole was about eighteen inches by twenty-eight, and there was an opening above the cover and at the side next to the sidewalk, to let the water from the street into the cesspool, and a part of the curbstone of the sidewalk was cut away for that purpose; that the cesspool was repaired two days after the accident; that new drains were put in from the catch-basins to the sewer, and an iron cover substituted for the wooden one; that the cover was in two pieces, and one part of it had floated away and was found in the middle of the cross-walk; and that, soon after the accident, timbers were placed in the hole, and a light placed there, and the next day the cover was replaced and remained till two days after.

The defendant asked the judge to give the following instructions to the jury: "1. In order to make the defendant liable in this case, the plaintiff must satisfy you that the defect which caused the injury had existed for such a length of time that the city, by the use of reasonable diligence, might have had notice of the defect, and, by the use of reasonable diligence, have repaired it before the accident. This defect was the open cesspool, into which, if you believe the story of the witnesses, the plaintiff stepped. 2. The liability of towns for defects in highways is a special and peculiar one; it is not based on the rules on which individual liability usually depends; it is of no consequence whether that which constitutes the defect arose from causes for which the city is responsible and over which it had control, or from natural and general causes. The fault for

which the city is responsible, if at all, consists in allowing the defect to remain, not in causing it to exist. The defendant could not be exonerated by showing that the defect arose from natural causes beyond its control; or made liable, whatever is the proof as to the manner in which the condition of the way became such as it was. 3. The city, in order to make it liable in this action, must have had notice of the defect which caused the injury, or an opportunity by reasonable diligence to have had notice of the defect, and by reasonable diligence to repair it. Notice of a condition of the cover which might produce a defect if there was a heavy rain when the sewer was stopped, will not be notice that the cover was off, or that there was a flood. 4. A liability to become a defect is not a defect. Notice to the city of such liability is not notice of a defect; the existence of such a liability is not the existence of a defect. If the cover was safe until the rain came, and after the rain the city did not know the cover was off, and did not have time after the defect existed to find out about it and repair it, then you should find for the defendant."

The first instruction was given as requested, excepting the last sentence; the second and third were given as requested; the judge did not give the fourth, but instructed the jury as follows: "If you find that the drain was so constructed as not to carry off the water in its ordinary flow, and if you find that the cover was so constructed, and in such a condition, that in a heavy rain the water which would ordinarily flow into the cesspool would thereby lift it off, that is a defect; and if you find that the drain was so constructed and the cover so constructed that this cover would, in the ordinary happening of events, be removed, leaving a hole in the street into which people would fall, and the city had notice of it, or by the exercise of due care could have known it, and a reasonable opportunity to remedy it, that would be a defect for which the city would be liable. The plaintiff contends that, from natural or other causes, this cesspool, so constructed, for a long time was liable to be uncovered, and was actually uncovered, and that the city ought to have known it, and with the exercise of reasonable diligence remedied it. If you find that to be a fact, the city would be liable if the plaintiff met with injury by it; but this is a fact for you to

find from the evidence, and has been fully discussed before you.
No injury that she may have received which is not the result of
this defect, so continued that the city had notice of it, or ought,
with the exercise of reasonable care, to have known and reme-
died, can she recover for. If she suffered in the manner she
has described, and if she suffered from a defect which the city
ought to have known and ought to have remedied, she can re-
cover, but she must have been in the exercise of due care, and
this defect must have been the sole cause of the injury."

The jury returned a verdict for the plaintiff · and the defend-
ant alleged exceptions.

*T. M. Babson*, for the defendant.

*S. B. Allen*, (*J. Bennett* with him,) for the plaintiff.

C. ALLEN, J.  Under the Gen. Sts. *c.* 44, § 22, a person who
received injury through a defect in a highway might recover
damages of the town by law obliged to repair the same, if such
town had reasonable notice of the defect, or if the same had
existed for the space of twenty-four hours previously to the
occurrence of the injury.  Under this statute, it was held that
it was the intention of the Legislature to limit the liability to
cases where the precise defect which caused the injury was
known to the town, or had existed for twenty-four hours; and
that, if the defect had not existed for twenty-four hours, the
town could not be held liable on the ground that its agents had
constructed or repaired the way so negligently that it was rea-
sonable to suppose that such a defect would be produced.  *Mon-
ies* v. *Lynn*, 121 Mass. 442, 444.  And, in a later stage of the
same case, it was declared that a liability to become defective
is not in itself a defect.  124 Mass. 165, 171.  See also *Hutchins*
v. *Littleton*, 124 Mass. 289.  Under that statute, and earlier ones
to the same effect, it had often been held that the liability of
the town became absolute if the defect had existed for twenty-
four hours; and that the town could not exonerate itself by
proof of due diligence on its part.  *George* v. *Haverhill*, 110
Mass. 506.  *Bodwell* v. *North Andover*, 110 Mass. 511, *n.*

The St. of 1877, *c.* 234, which was an act to amend the above
chapter of the General Statutes, made two changes in the section
referred to.  In the first place, it did away with the absolute
liability imposed on towns where the defect had existed for

twenty-four hours, and exonerated them from liability in all cases where there had been no lack of proper diligence on their part. *Rooney* v. *Randolph*, 128 Mass. 580. *Hayes* v. *Cambridge*, 136 Mass. 402, and 138 Mass. 461. And it substituted therefor a liability for an injury or damage received through a defect which might have been remedied, or an injury or damage which might have been prevented by reasonable care and diligence on the part of the town, if such town had reasonable notice of the defect, or might have had notice thereof by the exercise of proper care and diligence on its part, although the defect had not existed for any particular length of time, and although the town had no actual notice thereof. This statute, as reënacted in the Pub. Sts. *c.* 52, § 18, is now in force. It has essentially modified the rule as declared in *Monies* v. *Lynn*, above cited, which is the principal reliance of the defendant in the present case. The duty is now cast upon towns of using reasonable care and diligence to remedy defects, and to prevent damage or injury to persons and property by guarding against the effects of causes which are likely to produce such defects. *Flanders* v. *Norwood*, *ante*, 17.

The evidence in the present case was sufficient to show that the cover of the cesspool was liable to come off, and to float away, from the accumulation of water in such rain-falls as often occur, and such as the jury would be warranted in finding that reasonable care, diligence, and prudence should guard against. The case is thus brought directly within the existing statute, and, taking the instructions as a whole, the case was fairly left to the jury.

It is indeed contended, on the part of the plaintiff, that the present case is distinguishable from *Monies* v. *Lynn*, and that the verdict might well be supported as falling within the decision in *Hodgkins* v. *Rockport*, 116 Mass. 573. But, in view of the change in the legislation, it becomes unnecessary to consider this ground of contention.

The evidence that the cover had been off on other occasions within the year prior to the accident was competent, as bearing on the question whether the defect might have been remedied, or the injury prevented, by reasonable care and diligence on the part of the city. *Exceptions overruled.*