EDWIN J. HANSCOM *vs.* CITY OF BOSTON.

Middlesex. Jan. 19.— Feb. 26, 1886. DEVENS & GARDNER, JJ., absent.

A city is not liable, under the Pub. Sts. c. 52, § 18, for an injury caused to a traveller on a highway, by falling into a coal-hole in the sidewalk of the way, by reason of the cover to the hole, which was firm and close fitting, tightly set in the sidewalk, presenting no obstruction to travel, and even and regular with the surface of the sidewalk, turning over when he stepped upon it, because not fastened on the inside, as it was designed to be, by the occupant of the cellar underneath the sidewalk, if the fact that it was unfastened was not known to any officer of the city, and was not apparent from the street.

TORT for personal injuries occasioned to the plaintiff by an alleged defect in North Street, a highway in Boston. Trial in the Superior Court, before *Knowlton*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiff testified that he was on his way to the East Boston Ferry, going to his home by his usual route, and was

walking down North Street on the southerly sidewalk; that it was snowing at the time, and that two or three inches of snow had then fallen upon the walk, so that he could not see the face of the walk or the cover of a certain coal-hole therein; that, as he stepped upon what must have been the cover, he felt it slip or turn over, he was not certain which, and that he fell with his right leg going down into the opening, and received the injuries complained of; that when his leg was in the opening, he saw the cover a short distance from him, bottom side up; and that it had a ring in it in which to put a rope to fasten it down when in place, but there was no rope in it.

Charles Dolan testified that he was a policeman, and had been for several years, and had patrolled this street; that this coal-hole was one of three in the sidewalk in front of the premises known as the North End Mission; that he had repeatedly walked safely over this coal-hole when covered by means of this cover, and had seen other people do so; that he had never seen this cover out of place till this time; that he was at the place soon after the plaintiff fell into the opening; that the cover at the time lay at a short distance from the opening, bottom side up; that there was a ring in it with which to fasten the cover down; that there was nothing to show that it was fastened at the time of the accident; that the covers of all coal-holes in sidewalks should be fastened to hold them in place, and the usual way of fastening was to put a rope in the ring in the bottom of the cover and a stick through the rope; that, some months before the accident, complaint had been made that the surface of the covers of the other two had become smooth from wear, and new covers were then put on all three; that it was his duty to examine and report anything wrong in the street he patrolled, and that he always fully attended to this duty; that he had noticed these covers, when in the opening, to be firm and close fitting, tightly set in the sidewalk, presenting no obstruction to travel, and even and regular with the surface of the walk; that he had never seen any cause for complaint against these covers, excepting that mentioned concerning their smooth surface, and that this was remedied before the accident; that these covers, at the time of the accident, were better and stronger covers than those generally used in the sidewalks; and that he never knew, until after

the accident, that this cover had not been secured by a fastening made to it under the sidewalk.

Benjamin Luscomb testified that, at the time of the accident, he was superintendent in charge of the North End Mission; that, immediately after the accident, he found the cover off and near the hole, bottom up; that he thereupon ordered the janitor to go down into the basement and see to the fastening of the coal-hole covers; that he and the janitor went down to the basement right away, and that he ordered the janitor immediately to procure a rope and fasten this cover in its place; that there were three coal-holes in front of these premises; that the cover of this coal-hole had no rope attached to it, and he did not know whether it had been fastened by means of a rope during the time he was superintendent; that he found a rope hanging unfastened in one of the other two when he examined them just after the accident; that all the covers were close fitting and tight in place; that he had walked over them a good many times, and had seen others do so safely, and he thought that they were better than any coal-hole covers he had seen in the city, and he had looked at many; and that he had noticed that this one never moved when stepped upon.

Edwin S. Hanscom testified that, at the time of the accident, he was, and for five months previously had been, janitor of the North End Mission; that the three openings were designed for the taking of coal through the sidewalk into the cellar; that the other two had been used for that purpose, but the one into which the plaintiff fell had not been used for coal to his knowledge during that time; and that he examined all the covers immediately after the accident, and found none of them fastened.

No witness testified as to the condition of the cover or its fastenings at the time it was first put into the walk.

The defendant introduced no evidence; but asked the judge to rule, as matter of law, that, upon the evidence introduced by the plaintiff, he had failed to make out his case, and could not recover, inasmuch as he had failed to offer any evidence of notice or knowledge on the part of the defendant as to the existence of the defect alleged, or any evidence of any opportunity for the defendant, by the exercise of reasonable care and diligence on its part, to have had any knowledge or notice of the existence

of said defect before the happening of the accident. The judge refused so to rule, and submitted the case to the jury upon appropriate instructions, which were not excepted to.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*R. W. Nason,* for the defendant.

*J. W. McDonald,* for the plaintiff.

FIELD, J. The Pub. Sts. *c.* 52, § 18, provide that, if a person receives bodily injury, or damage to his property, through a defect in a highway, " which might have been remedied, or which damage or injury might have been prevented by reasonable care and diligence on the part of the county, town," &c., he may recover damages therefor. This provision was taken from the St. of 1877, *c.* 234, § 2. By the Gen. Sts. *c.* 44, § 22, such a person might recover damages, if the county or town " had reasonable notice of the defect, . . . . or if the same had existed for the space of twenty-four hours previous to the occurrence of the injury or damage." Under the General Statutes, upon the question of reasonable notice, the rule of law was, that the facts must be such as to lead to the inference that the proper officers of the town, whose duty it is to attend to municipal affairs, did actually know of the existence of the defect, or with proper diligence and care might have known it. *Donaldson* v. *Boston,* 16 Gray, 508. *Harriman* v. *Boston,* 114 Mass. 241. *Monies* v. *Lynn,* 119 Mass. 273; *S. C.* 121 Mass. 442, and 124 Mass. 165. *Foster* v. *Boston,* 127 Mass. 290.

The decisions upon reasonable notice throw some light upon what is meant in the St. of 1877, *c.* 234, § 2, by reasonable care and diligence. See St. 1786, *c.* 81, § 7; Rev. Sts. *c.* 25, § 22; St. 1850, *c.* 5; *Brady* v. *Lowell,* 3 Cush. 121.

We think that the defect must be one which the proper officers either had knowledge of, or, by the exercise of reasonable care and diligence, might have had knowledge of, in time to have remedied it, or to have prevented the injury complained of. *Lyman* v. *Hampshire,* 140 Mass. 311. *Purple* v. *Greenfield,* 138 Mass. 1. *Rooney* v. *Randolph,* 128 Mass. 580. *Harriman* v. *Boston, ubi supra.*

In the present case, there is no evidence that the cover of the coal-hole was out of place before the plaintiff stepped on it, and

was injured.    There is evidence from which the jury may have found that the cover had not been fastened down on the inside for some time before the accident.    If the defendant is liable at all, it must be on the ground that the cover, when in its place, if unfastened on the inside, constituted a defect in the street, which the proper officers of the city ought, by the exercise of reasonable care and diligence, to have known and remedied.    It is to be noticed that the Gen. Sts. *c.* 44, § 1, required that highways be kept in repair " so that the same may be safe and convenient for travellers ; " but the Pub. Sts. *c.* 52, § 1, require that they be kept in repair " so that the same may be reasonably safe and convenient for travellers."    Under the existing statutes, the questions necessarily arise, first, whether there is any evidence which tends to show that the highway was not reasonably safe and convenient for travellers ;  and, secondly, if there is such evidence, whether there is any evidence that the town, by reasonable care and diligence, might have remedied the defect, or prevented the damage or injury.    The exceptions in the present case relate solely to the second question.    The testimony was in effect that this was a firm and close fitting cover to the coal-hole, tightly set in the sidewalk, presenting no obstruction to travel, and even and regular with the surface of the walk.    There was no testimony that it could be displaced by the ordinary use of the walk.    It does not appear that the ordinances of the city regulating coal-holes were put in evidence ; see Rev. Ord. 1883, *c.* 26, §§ 24, 25 ;  or that the covering was not constructed in accordance with the ordinance.    The cover had a ring on the under side intended to be used in fastening it down.    There was no evidence that the coal-hole and cover were improperly constructed, or that there was anything in the appearance of the coal-hole or cover that indicated any defect, or that it had ever before been out of place, and no evidence that the officers of the city had any knowledge that the cover was not fastened down on the inside.    If the evidence tended to show any defect at all which it was the duty of the city to remedy, it was that the the cover was not fastened on the inside.

It has never yet been held to be the duty of the officers of the city to examine from time to time covers of coal-holes, which are properly constructed and apparently secure, to see if the

occupants of the cellars under the coal-holes keep the covers fastened on the inside. In all the decided cases under former statutes, if the defect had not existed for twenty-four hours, and the town officers had no actual notice or knowledge of it, or did not create it, it was left to the jury to find whether these officers, by proper diligence and care, might have known it, only when there was evidence that the defect was open and visible, so that it might be said to be in a sense notorious. *Lobdell* v. *New Bedford*, 1 Mass. 153. *Reed* v. *Northfield*, 13 Pick. 94. *Doherty* v. *Waltham*, 4 Gray, 596. *Winn* v. *Lowell*, 1 Allen, 177. *Harriman* v. *Boston, ubi supra*. *Hodgkins* v. *Rockport*, 116 Mass. 573. *Crosby* v. *Boston*, 118 Mass. 71. *Burt* v. *Boston*, 122 Mass. 223. *Whitehead* v. *Lowell*, 124 Mass. 281.

We think, if the coal-hole was properly constructed, and the cover was properly fitted and was not apparently insecure, and the only defect, if any, was that it was left unfastened on the inside by the occupant of the cellar, and this was not known to the officers of the city, or apparent from the street, that the jury could not properly find, under existing statutes, that the city could have remedied the defect or prevented the injury by reasonable care and diligence.

In *Burt* v. *Boston*, 122 Mass. 226, it is said that "there is no provision of the statute, which limits the liability of towns and cities to open and visible defects, as contended by the defendant, but it extends to all defects." It was not decided in that case that the appearance of the flagstone (the alleged defect) was such that the jury might find that the city had reasonable notice of the defect, but only that the jury might find that the sidewalk had been in a dangerous condition for twenty-four hours previously to the accident.

We are unable to see any evidence in the case at bar, which ought to have been submitted to the jury, tending to show that the city could have remedied the defect, if any existed, or have prevented the injury by reasonable care and diligence.

*Exceptions sustained.*